January 29, 2025

***Via CM/ECF and Hand Delivery***

The Honorable Araceli Martinez-Olguin
United States District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

**Re: *S.H. Silver Co. Inc. v. Sentinel Insurance Company, Ltd.*, Case No. 3:24-cv-00017-AMO**

Dear Judge Martinez-Olguin:

Pursuant to Section I.(2)(b) of this Court's Standing Order (Dkt. 13), Plaintiff S.H. Silver Co. Inc. ("Plaintiff") and Defendant Sentinel Insurance Company, Ltd. ("Defendant") submit this joint letter brief concerning the discoverability of testimony and documents regarding Defendant's decision to non-renew Plaintiff's policy. After good faith meet and confer conferences conducted by both telephone and video, the Parties respectfully agree they are at an impasse and welcome the Court's guidance.

**A. All the discovery at issue concerns Defendant's decision to non-renew Plaintiff's policy.**

The Parties agree that this is an "all or nothing" dispute regarding the discoverability of evidence concerning Defendant's decision and attendant procedures to non-renew Plaintiff's policy. In particular, the Parties disagreements concern:

- **Plaintiff's Requests for Production ("RFP") Nos. 8-10:** Each seek documents concerning Defendant's non-renewal of Plaintiff's policy and Defendant's practices and procedures for issuing such non-renewal notices.

- **Plaintiff's Interrogatories ("ROG") Nos. 3-4:** ROG No. 3 seeks all facts supporting Defendant's decision to non- renew Plaintiff's policy. ROG No. 4 seeks an explanation as to why Defendant concluded Plaintiff's "loss experience on this policy has exceeded a level that [Defendant] considers to be acceptable" as set forth in Defendant's July 9, 2021 Notice of Non-renewal. *See* Exhibit A (Notice of Non-renewal).

- **Plaintiff's 30(b)(6) Deposition Topic Nos. 3, 8, and 9:** These deposition topics mirror the foregoing written discovery and seek testimony regarding (1) Defendant's procedures or other considerations for determining whether to non-renew an insurance policy; (2) Defendant's reasoning and bases for issuing a notice of non-renewal to Plaintiff; and (3) Defendant's conclusion that Plaintiff's "loss experience on this policy has exceeded a level that [Defendant] considers to be acceptable," as set forth in Defendant's July 9, 2021 Notice of Non-renewal.

Defendant objects to all the foregoing discovery as <u>irrelevant</u> and has refused to provide any responsive documents, substantive interrogatory responses, or testimony. Plaintiff disagrees with Defendant's relevancy objections, and the Parties articulate their respective positions as follows.

**B. Plaintiff contends that information regarding Defendant's non-renewal is relevant to Defendant's bad faith claims handling conduct and, therefore, discoverable.**

Plaintiff operates a successful jewelry store in Northern California. On December 31, 2020, burglars broke into Plaintiff's store and stole valuable merchandise valued at more than $5,000,000. The criminals also caused significant property damage exceeding $1,000,000. Plaintiff submitted a claim under its "Business Owner's" insurance policy issued by Defendant. Plaintiff expected to work cooperatively with Defendant to resolve its claim, however, Defendant engaged in bad faith claims handling by searching for ways to avoid paying Plaintiff's full loss. *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1281 (1994) (bad faith occurs when an insurer "search[es] for ways to avoid paying a claim"); *see also* Complaint (Dkt. 1) ¶¶ 33-43 (alleging bad faith claims handling by Defendant).

Most crucial here, Plaintiff alleges that Defendant engaged in bad faith claims handling by "placing its own interests above its insured's" and issuing "a non-renewal of the policy" almost *immediately* after Plaintiff submitted its claim. Complaint (Dkt. 1) ¶ 37(a); *see also McCormick v. Sentinel Life Ins. Co.*, 153 Cal. App. 3d 1030, 1043 (1984) (holding that the insurer's duty of good faith "does require an insurer to place the interests of its insured above its own"); Exhibit A (Notice of Non-renewal). Plaintiff further alleges Defendant issued an immediate non-renewal to, among potentially other reasons, dissuade Plaintiff from pursuing its claim and to deter Plaintiff from securing the full benefits of its insurance. Complaint (Dkt. 1) ¶¶ 14-25, 33-43. With these allegations in mind, Plaintiff propounded the foregoing non-renewal discovery, which Defendant objected to in full as purportedly "irrelevant." Defendant's relevancy objections in the context of this dispute have no legal merit and should be overruled in full by this Court.

As this Court is aware, discovery is permissible regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Importantly, relevant information is "construed broadly" to include "any matter that bears on any issue that is or may be in the case." *Plumlee v. Pfizer, Inc.*, 2014 U.S. Dist. Lexis 23671, at *15 (N.D. Cal. Feb. 21, 2014). Moreover, relevant information does not necessarily have to be admissible so long as it is "reasonably calculated to lead to the discovery of admissible evidence." *Survivor Media, Inc. v. Survivor Prods*., 406 F.3d 625, 635 (9th Cir. 2005). As such, relevancy should be construed "liberally and with common sense" and discovery "***should be allowed unless the information sought has no conceivable bearing on the case***." *Baptiste v. Lids*, 2013 U.S. Dist. Lexis 150413, at *3 (N.D. Cal. Oct. 18, 2013) (emphasis added).

Defendant's decision to non-renew the policy immediately after Plaintiff submitted its claim fits squarely within this Court's broad relevance standards. For example, in *J&M*, the policyholder sought discovery concerning an insurer's alleged bad faith claims handling, including the insurer's decision to non-renew the policy that forced the policyholder to obtain replacement coverage. *J&M Assocs. v. Nat'l Union Fire Ins. Co*., 2008 U.S. Dist. Lexis 16855, at *19 (S.D. Cal. Mar. 4, 2008). In response, the insurer argued, as Defendant argues here, that an insurer's decision to non-renew a policy is not a "viable" theory of bad faith "under California law" and, therefore, the discovery should not be permitted. *Id.* The court disagreed and ruled that the insurer's characterization of the discovery as simply "wrongful non-renewal" was "too narrow." *Id.* Moreover, the court held that the policyholder may "obtain discovery regarding any nonprivileged matter relevant to the allegation" of bad faith claims handling. *Id.* Accordingly, the court permitted the discovery because it went "beyond non-renewal" and concerned allegations of "bad faith" claims handling. *Id.*

Here, the same is true for Plaintiff's discovery because the gravamen of this dispute concerns Defendant's *bad faith claims handling*, which encompasses Defendant's non-renewal decisions made in furtherance of Defendant's bad faith efforts to avoid or limit coverage for Plaintiff. Indeed, the few documents Defendant has produced regarding non-renewal confirm that Defendant took measures to "ensure" Plaintiff's policy "gets set up for non-renewal" *within days* of Plaintiff submitting its claim, and before any investigation into the circumstances of the alleged loss could occur. *See* Exhibit B. Defendant then attempted to justify its non-renewal by summarily concluding that Plaintiff's "loss experience on this policy has exceeded a level that [Defendant] considers to be acceptable." *See* Exhibit A. Plaintiff alleges that such *conduct* demonstrates Defendant's bad faith intention to, among other things, (1) force Plaintiff to accept whatever amounts Defendant offered to resolve the claim and (2) place Defendant's interests above its insured, which is contrary to law and an appropriate topic of discovery. *McCormick*, 153 Cal. App. 3d at 1043. Plaintiff should also be allowed to investigate Defendant's contentions regarding what it "considers" to be an "acceptable" loss that precipitated Defendant's non-renewal, and whether such "considerations" were *unreasonable* under applicable law. *Chateau Chamberay Homeowners Ass'n v. Associated Internat. Ins*. Co., 90 Cal. App. 4th 335, 347 (2001) (an insurer engages in bad faith claims handling by "act[ing] unreasonably or without proper cause"). This discovery is also relevant to test the veracity of Defendant's own loss calculations—*e.g.,* Defendant should not be permitted to claim Plaintiff's loss was of such magnitude to immediately warrant non-renewal and then simultaneously seek to diminish (or resist paying) the full value of Plaintiff's claim. In sum, discovery concerning Defendant's non-renewal decision and the factors underlying its decisions should be permitted, especially because such discovery may lead to additional evidence of Defendant's bad faith claims handling conduct.

Additionally, Defendant's authorities and arguments below offer nothing of value to resolve this discovery dispute. At most, Defendant cites a handful of cases for the proposition that an insurer's decision to non-renew a policy in-and-of-itself does not constitute bad faith claims handling. *See Travelers Ins. Co. v. Lesher*, 187 Cal. App. 3d 169, 194 (1986) (finding on appeal that testimony at trial on nonrenewal, while irrelevant, was not reversible error); *Mock v. Mich. Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 338 (1992) (discussing generally that nonrenewal was not evidence of insurer's "evil motive" on appeal of award of punitive damages); *Greene v. Safeco Ins. Co.*, 140 Cal. App. 3d 535 (1983) (affirming demurrer of complaint where *sole basis* for bad faith was nonrenewal); *Atmel Corp. v. St. Paul Fire & Marine Ins. Co*., 421 F. Supp. 2d 1265, 1268 (N.D. Cal. 2006) (finding nonrenewal *alone* cannot support a bad faith action). ***Importantly***, such authorities are inapposite here because they do not concern discovery, and any issues regarding the *admissibility* of non-renewal evidence may be resolved separately. This Court should also reject Defendant's narrow articulation of Plaintiff's bad faith claims as concerning *only* non-renewal, just like the court rejected similar arguments in *J&M*. To be clear, Plaintiff's allegations of bad faith go "beyond non-renewal" and concern Defendant's motives and unreasonable conduct in administering Plaintiff's claim. *J&M Assocs.*, 2008 U.S. Dist. Lexis 16855, at *19; *see also* Complaint (Dkt. 1) ¶¶ 33-43. Such motives and conduct include, among other things, Defendant's factual bases, reasoning, and procedures for deciding to non-renew Plaintiff's policy in this case. In other words, Plaintiff's lawsuit concerns Defendant's bad faith claims handling, and Defendant's decision/reasoning to non-renew is just one "nonprivileged matter that is relevant to [Plaintiff's] claim." Fed. R. Civ. P. 26(b)(1).

For all of these reasons, this Court should overrule Defendant's relevancy objections and require Defendant to (1) produce responsive non-privileged documents to RFP Nos. 8-10; (2) provide substantive and complete responses to ROG Nos. 3-4; and (3) provide relevant non-privileged testimony in response to 30(b)(6) Deposition Topics Nos. 3, 8, and 9.

### C. Defendant's response to Plaintiff's arguments

Sentinel's position is quite simple. There is no possible relevance to evidence regarding the non-renewal, and wasting the parties' time and money on conducting discovery on this issue is disproportionate to the needs of the case. This is a dispute regarding the *amount* of S.H. Silver's *covered* Business Income and Extra Expense Losses. Sentinel has paid over $7 million including policy limits for the Business Personal Property (including Tenant Improvements and Betterments) losses. The contractual dispute involves approximately $1.5 million of Business Income/Extra Expense policy benefits.

The fundamental flaw in Silver's argument is that it seeks to convert legally permissible conduct – statutorily compliant nonrenewal – into legally prohibited conduct – the unreasonable and without proper cause deprivation of contractual benefits. They are separate things.

California law uniformly holds that where an insurer complies with the nonrenewal statute (Insurance Code § 678.1), as it did here, it has an absolute right to nonrenew a policy – with certain regulatory exceptions inapplicable here, an insurer cannot be compelled to insure someone. Because Sentinel had an absolute right to nonrenew S.H. Silver, the fact that it exercised that right cannot be evidence to support a claim of bad faith, which is the unreasonable and without cause deprivation of policy benefits. *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal.App.3d 1, 55 (1985); *501 East 51st Street, Long Beach-10 LLC v. Kookmin Best Ins. Co.*, 47 Cal.App.5th 924, 937 (2020).

The leading cases, all mentioned by Silver above, all conclude that an insurer's exercise of its right to nonrenew is not evidence of bad faith. Silver's claimed distinction that these are not discovery cases is immaterial. Ultimately relevance is determined by the claims in the action. If the evidence is of legally permissible conduct, it is irrelevant to prove that *other conduct* was impermissible.

*Greene v. Safeco*, supra is the earliest case. There the policy was an automobile insurance policy. The policyholder and insurer ended up in a dispute about the repair of the vehicle. After the dispute was resolved, Safeco nonrenewed Ms. Greene because it concluded she had been uncooperative in the claim adjustment. The court held Safeco had an absolute right to non-renew, which was not actionable.

*Travelers Ins. Co. v. Lesher*, 187 Cal.App.3d 169 (1986), *disapproved on other grounds*, *Buss v. Superior Court*, 16 Cal.4th 35 (1997), reached the same conclusion. There, the issue was whether the liability insurer had engaged in various wrongful acts in its defense of the underlying case. The appellate court concluded evidence offered regarding nonrenewal was irrelevant, but in the context of that particular case, harmless error.

*Mock v. Michigan Millers Mut. Ins. Co.*, 4 Cal.App.4th 306 (1992) was a property insurance case. It is the most similar to this case. There, there was a dispute regarding payments under the policy. The appellate court held the refusal to renew could not be evidence of an evil motive on the insurer's part. It concluded an insurer was "always free" to refuse to "an unacceptable risk" and it had no obligation to renew. *Id.* at 338.

Finally, *Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 421 F. Supp. 2d 1265 (N.D. Cal. 2006) is the only federal decision. There, Judge Ilston agreed that the nonrenewal was not an act of bad faith, noting

with approval both *Lesher* and *Mock* and also citing the late Justice Croskey for the proposition that nonrenewal does not breach the implied covenant of good faith.

The one *unpublished* case Silver cites, *J&M Assoc. v. National Union,* 2008 U.S. Dist. Lexis 16855 (S.D. Cal. 2008) does not change the result. The allegedly wrongful conduct there was the insurer allocating to the policyholder's loss ratio, its costs of defending against the coverage claim. Loss ratios matter for future premiums as well as renewal decisions. They did not allege an actual nonrenewal. *J&M* also predates the amendment to Rule 26 to add the proportionality requirement and reflects a non-proportional view of discovery which is no longer appropriate.

Further, under *State Farm v. Campbell*, 538 U.S. 408 (2003) a punitive damages award cannot be based on legally permissible conduct. "A state cannot punish a defendant for conduct that may have been lawful where it occurred." *Id.* at 421. That is what Silver is attempting to do by conducting discovery and eventually seeking to offer evidence of nonrenewal, a particularly sensitive issue in California today – to inflame a jury against Sentinel simply because of something it was entitled to do.

Discovery into the nonrenewal is not proportional to the needs of the case under Rule 26(b). Evaluation of proportionality requires examination of the importance of the issues to the resolution of the case. *Elgindy v. Aga Service Co.*, 2021 WL 5083761, *3 (N.D. Cal. 2021). Rule 26(b) states the basic rule of proportionality including factors such as the importance of the issues at stake, the importance of the discovery, and whether the burden or expense outweighs the likely benefit. Nonrenewal has nothing to do with the resolution of this case; Silver cannot recover damages for it. Spending time and money to find out why Sentinel chose to nonrenew an account with a loss ratio over 10,000% (i.e. the amount Sentinel had paid then and did pay later was over 100 times the premium paid) all to gather more evidence that Sentinel had exercised its statutory right *not* to contract, is completely disproportional to the issues in this matter.

Sentinel respectfully requests that the requested discovery be denied.

* * *

The Parties appreciate the Court's attention to this matter and are available to respond to any inquiries from the Court.[1]

Respectfully,

| | |
|---|---|
| */s/ T. Connor O'Carroll* | */s/ Andrew B. Downs* |
| T. Connor O'Carroll | Andrew B. Downs |
| *Attorney for Plaintiff* | *Attorney for Defendant* |

cc: All counsel of record *(Via CM/ECF)*

---

[1] The Parties are mindful of the Court's preference "that the parties file a separate statement for each [discovery] dispute." *See* Standing Order § I.(2)(b). Accordingly, this dispute is limited to only non-renewal issues and the Parties may submit further letters to resolve any future discovery dispute, as necessary.