UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| S.H. SILVER COMPANY INC,<br><br>Plaintiff,<br><br>v.<br><br>SENTINEL INSURANCE COMPANY, LIMITED,<br><br>Defendant. | Case No. 24-cv-00017-AMO  (PHK)<br><br>**ORDER RESOLVING DISPUTE RE SCOPE OF DISCOVEY RE NON-RENEWAL OF INSURANCE POLICY**<br><br>Re: Dkts. 42, 46 |

Plaintiff S.H. Silver Company Inc. ("Plaintiff"), a family run jewelry business, filed this lawsuit against its comprehensive insurance policy provider, Defendant Sentinel Insurance Company, Ltd. ("Defendant"), alleging bad faith claims handling tactics and breach of contract in connection with a property damage claim arising from a retail burglary. *See* Dkt. 1. The case has been referred to the undersigned for discovery. *See* Dkts. 43, 45.

Now before the Court is a joint letter brief and subsequently filed status report regarding a dispute as to the scope of discovery relating to the Defendant's non-renewal of Plaintiff's insurance policy. [Dkt. 42; Dkt. 46]. The Court finds the dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

**LEGAL STANDARD**

With regard to the scope of discovery in federal civil actions, Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other

matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.

1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## ANALYSIS

The instant dispute centers on Defendant's relevance objections to discovery requests seeking documents, information, and testimony concerning Defendant's decision and attendant procedures to non-renew Plaintiff's insurance policy. Specifically, the Parties disagree as to the propriety of Defendant's relevance objections to all of the following (the Parties did not provide copies of the discovery requests themselves, and the below summaries are assumed to be accurate since neither Party objected to these summaries, taken from the Parties' joint letter brief):

- **Plaintiff's Requests for Production ("RFP") Nos. 8-10:** These seek documents concerning Defendant's non-renewal of Plaintiff's insurance policy and Defendant's practices and procedures for issuing such non-renewal notices.

- **Plaintiff's Interrogatories ("ROG") Nos. 3-4:** ROG No. 3 seeks all facts supporting Defendant's decision to non- renew Plaintiff's policy. ROG No. 4 seeks an explanation as to why Defendant concluded Plaintiff's "loss experience on this policy has exceeded a level that [Defendant] considers to be acceptable" as set forth in Defendant's July 9, 2021 Notice of Non-Renewal.

3

- **Plaintiff's 30(b)(6) Deposition Topics Nos. 3, 8, and 9:** These deposition topics mirror the foregoing written discovery and seek testimony regarding (1) Defendant's procedures or other considerations for determining whether to non-renew an insurance policy; (2) Defendant's reasoning and bases for issuing a Notice of Non-Renewal to Plaintiff; and (3) Defendant's conclusion that Plaintiff's "loss experience on this policy has exceeded a level that [Defendant] considers to be acceptable," as set forth in Defendant's July 9, 2021 Notice of Non-Renewal.

[Dkt. 42 at 1].

Defendant objects to providing any responsive documents, substantive interrogatory responses, or testimony sought by each of these requests, arguing that "[t]here is no possible relevance to evidence regarding the non-renewal" of Plaintiff's policy. *Id.* at 4. Defendant argues that this case is fundamentally a "contractual dispute" relating to the amount of Plaintiff's covered losses under the policy at issue, which has "nothing to do with" non-renewal. *Id.* at 4-5. Citing California law, Defendant argues entitlement to "an absolute right" to non-renew Plaintiff's policy. *Id.* at 4 (citing CAL. INS. CODE § 678.1 and California caselaw thereunder). Defendant thus contends that its decision to exercise the non-renewal right was "legally permissible conduct" and "not evidence of bad faith." *Id*. Defendant argues that evidence relating to non-renewal is therefore "irrelevant to prove that *other conduct* was impermissible." *Id.* (emphasis in original).

Plaintiff argues that discovery regarding non-renewal of the insurance policy is highly relevant to this case, because the Complaint explicitly alleges that Defendant engaged in bad faith claims handling by, among other things, "[p]lacing its own interests above the Insured's, as evidenced by its unjustified decision to issue a nonrenewal of the Policy during the claims process." *Id.* at 2 (citing Dkt. 1 at ¶ 37(a)). Plaintiff points to other allegations in the Complaint suggesting that Defendant issued a non-renewal of the policy to "dissuade Plaintiff from pursuing its claims and to deter Plaintiff from securing the full benefits of its insurance." *Id.* (citing Dkt. 1 at ¶¶ 14-25, 33-43). Plaintiff argues that "the few documents" regarding non-renewal that have been produced in this litigation thus far support the relevance of these discovery requests. *Id.* at 3. According to Plaintiff, the limited discovery received supports the contention that Defendant took measures to "ensure" that Plaintiff's policy was "set up for non-renewal" before any investigation into the circumstances of the alleged loss had occurred and then "attempted to justify" that non-

4

renewal decision by "summarily concluding" that Plaintiff's claimed loss exceeded a level that the insurer "considers" to be "acceptable." *Id.* Plaintiff argues that it should be "allowed to investigate Defendant's contentions regarding what it 'considers' to be an 'acceptable' loss" to determine whether such considerations were unreasonable under applicable law. *Id.* Plaintiff asks that the Court "overrule Defendant's relevancy objections and require Defendant to (1) produce responsive non-privileged documents to RFP Nos. 8-10; (2) provide substantive and complete responses to ROG Nos. 3-4; and (3) provide relevant non-privileged testimony in response to 30(b)(6) Deposition Topics Nos. 3, 8, and 9." *Id.*

Defendant's relevance objections are not well-founded for several reasons. First, as noted by Plaintiff, the Complaint specifically alleges that one basis for asserting a breach of the covenant of good faith and fair dealing (the second cause of action) was the allegedly unjustified non-renewal of the insurance policy. *See* Dkt. 1 at ¶ 37(a). In general, "courts look to the allegations in the complaint to determine the permissible scope of discovery and apply the standards embodied in Rule 26, 'balancing the nature of the claims, the relevance and nature of the information sought, and the burden of producing the information, among other things.'" *Gutierrez v. Converse Inc.*, No. 2:23-cv-06547-KK-MAR, 2024 WL 2106952, at *10 (C.D. Cal. May 2, 2024) (quoting *Chow v. SentosaCare, LLC*, No. 19-CV-3541-FB-SJB, 2020 WL 5623976, at *4 (E.D.N.Y. July 21, 2020)). Defendant assumes that it will ultimately prevail on the second cause of action on the asserted grounds that there is an absolute right under California law not to renew an insurance policy so long as certain requirements are met. The flaw in Defendant's position is that that issue has not yet been resolved in this case. The second cause of action remains operative in this case, and therefore the scope of the Complaint's express pleading undermines Defendant's across-the-board relevance objections.

Further, discovery of non-privileged information and documents, such as from an insurance claims file, is allowed in relation to a bad faith failure to pay on an insurance claim, even where there is a related breach of contract cause of action. *See MOL (Am.), Inc. v. Carolina Cas. Inc. Co.*, No. 05 C 5562, 2006 WL 8461734, at *5 (N.D. Ill. Nov. 1, 2006) ("'[W]here allegations of bad faith exist against an insurance company, the plaintiff insured is entitled to

5

know the substance of the investigation, the information available and used to make a decision, and the evaluations and advice relied upon for the decision. All of this relevant information is in the possession of the insurer, and the insurance claims file is likely to be the sole or primary source.'") (internal citation omitted); *Crum & Forster Specialty Ins. Co. v. Great W. Cas. Co.*, No. EP-15-cv-00325-DCG, 2016 WL 10459397, at *6 (W.D. Tex. Dec. 28, 2016) (overruling relevance objections and ordering production of insurance evaluations because "the claims file is a unique, contemporaneously prepared history of the company's handling of the claim . . . [that] is also likely to be the sole or primary source of coverage evaluations").

Objections to discovery related to insurance coverage issues have been overruled where, as here, there exist bad faith claims which justify the relevance of the discovery sought. *See, e.g.*, *N. Am. Specialty Ins. Co. v. Iberville Coatings, Inc.*, No. 99-859-A-M2, 2002 WL 34423316, at *2 (M.D. La. Mar. 22, 2002) ("The duty to defend is not the only issue in this case. Iberville Coatings and Georgia Gulf also have made a specific claim for coverage and for an award of penalties and attorney's fees for bad-faith settlement practices.").

The *J&M Associates* case cited by Plaintiff is further instructive here. *See* Dkt. 42 at 2 (citing *J&M Assocs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, No. 06-CV-0903-W (JMA), 2008 WL 638137, at *7 (S.D. Cal. Mar. 4, 2008)). In that case, the plaintiff, J&M, sought discovery via interrogatories and document requests directed to the defendant insurer's allocation of defense costs, asserting that the insurer, National Union, had been allocating the costs of defense in a manner which was improper and evidence of bad faith. 2008 WL 638137, at *7. The insurer there, as here, argued that this was "an 'untenable' theory" which was "not viable under California law" and objected to the discovery on essentially the same relevance grounds as asserted here. *Id.* Rejecting the insurer's objection to discovery, the district court held:

> As National Union should be aware, . . . it is not within this Court's purview to determine whether the above allegation should be stricken-the district judge must do so. Until and unless the allegation is stricken, it remains a component of J&M's bad faith claim and, as such, J&M is entitled to obtain discovery regarding any nonprivileged matter relevant to the allegation. Moreover, National Union's characterization of this allegation as simply a "wrongful non-renewal theory" is too narrow. It is clear that J & M's allegation, and the discovery it seeks in relation thereto, go beyond the non-renewal of J & M's policy by National Union. Rather, J & M seeks this discovery as evidence of National Union's alleged bad faith.

*Id.*

Defendant's attempts to distinguish *J&M Associates* from the case at hand are unpersuasive. [Dkt. 42 at 5]. The fact that *J&M Associates* was decided prior to the 2015 amendment of Rule 26's provisions regarding proportionality does not diminish that opinion's holding as to the scope of relevance. And Defendant's argument that *J&M Associates* "did not allege an actual nonrenewal" is belied by the quoted language from that opinion above, which plainly shows that the insurer there took the position that the asserted claim was "simply a 'wrongful non-renewal theory.'" Thus, Defendant's argument to distinguish the persuasive force of *J&M Associates* fails.

The cases cited by Defendant to support its objections to the discovery sought here are all, as Defendant admits, cases discussing the ultimate issue of whether a non-renewal constituted bad faith claims handling and discussing admissibility of evidence at trial. *See* Dkt. 42 at 5. And, as Defendant admits again, none of these cases discuss the proper scope of discovery and none address (much less approve) an objection as to relevance such as the objection asserted here. *Id.* Defendant's attempt to brush away the fact that these cases do not address the scope of discovery is unavailing.

Further, Defendant's hyperbolic attempt to liken discovery to "punishment" or "punitive damages" demonstrates a fundamental misunderstanding of the federal civil discovery system. *Id.* As the Ninth Circuit has recognized "the purpose of discovery is to aid a party in the preparation of its case, not to punish its opponents for past sins." *Pac. Fisheries Inc. v. United States*, 484 F.3d 1103, 1111 (9th Cir. 2007) (citing Fed. R. Civ. P. 26(b) advisory committee's note to 1946 amendment). A court should not "permit a trial by ambush, which the federal discovery rules are designed to avoid." *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-03393-YGR, 2015 WL 4040388, at *25 (N.D. Cal. July 1, 2015), *rev'd on other grounds*, 666 F. App'x 884 (Fed. Cir. 2016). The Court trusts all Parties will, going forward, tone down unproductive and legally unsupportable verbiage and fully comply with this Court's Discovery Standing Order and the Northern District of California's Guidelines for Professional Conduct, particularly regarding discovery.

As discussed above, relevance alone does not end the inquiry; relevant discovery must also be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Defendant argues that the discovery requests are all improper because the non-renewal allegedly "has nothing to do with the resolution of this case; [Plaintiff] cannot recover damages for it." [Dkt. 42 at 5]. Defendant argues that evidence that it "had exercised its statutory right *not* to contract [] is completely disproportional to the issues in this matter." *Id.* (emphasis in original). As this recitation demonstrates, Defendant's non-proportionality objection is, in large part, a mere reformulation of the lack of relevance objection, and to that extent is **OVERRULED**.

However, the Court notes that the document requests appear to seek documents on Defendant's practices and procedures for issuing non-renewal notices generally and, to some extent, are not limited to Plaintiff's policy or policies like it. Similarly, Plaintiff's 30(b)(6) deposition notice seeks testimony on Defendant's procedures or other considerations for determining whether to non-renew any insurance policy, again apparently not limited to Plaintiff's policy or policies like it. *Id.* at 1. These discovery requests are also unlimited as to time period and unlimited as to the type of insurance policy at issue. On the current record, the Court finds that such scope is not proportional to the needs of the case. To the extent the document requests and 30(b)(6) notice seek documents or testimony as to Defendant's practices and/or policies relating to non-renewal in general, Defendant's lack of proportionality objections are **SUSTAINED-IN-PART** at this time. These discovery requests **SHALL** be limited temporally to the time period of January 1, 2019 to December 31, 2022, *i.e.,* from the start of the full calendar year prior to the period of the Business Owner's Policy at issue until the end of the full calendar year after that policy's term. Further, these discovery requests **SHALL** be limited to Defendant's non-renewal practices, procedures, and other considerations for Defendant's other Business Owner Policies (and other policies, however titled or denominated, providing the same types of coverages to business entities as Plaintiff's policy at issue).

Finally, while Defendant raises no privilege objections, the Court is cognizant that discovery into an insurer's files may implicate documents and information which are alleged to be protected from discovery due to the attorney-client privilege and work product doctrine. *See, e.g.,*

8

*Crum & Forster*, 2016 WL 10459397, at *7-9. The Court cautions counsel for the Parties to reasonably carry out their respective duties and obligations regarding proper assertions of privilege and appropriate and timely privilege logs, as well as their obligation to reasonably confer on any such issues.

## CONCLUSION

As discussed herein, the Court **OVERRULES** Defendant's relevance objections to the discovery requests at issue. Defendant is **ORDERED** to serve supplemental responses to ROG Nos. 3-4 consistent with this Order by no later than **March 11, 2025**. Defendant is further **ORDERED** to search for, collect, process, and then produce non-privileged documents responsive to RFP Nos. 8-10 consistent with this Order, where such production **SHALL** be substantially completed by no later than **March 20, 2025**. The Parties are **ORDERED** to promptly meet and confer (and no later than **March 4, 2025**) to schedule the 30(b)(6) deposition at issue (on the topics consistent with this Order) at a time, date, and location mutually agreed upon by the Parties. To the extent consistent with the specific deadlines in this Order, the Parties **SHALL** comply with the Court's Standing Order for Discovery. The Parties are free to reach agreement to reasonably adjust any of the deadlines in this Order to dates which are mutually agreeable to both Parties.

This **RESOLVES** Dkts. 42 and 46.

**IT IS SO ORDERED.**

Dated: February 18, 2025

PETER H. KANG
United States Magistrate Judge